**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ellen Keates, an individual; and A.K., a minor, through her parent and guardian Ellen Keates,<br><br>Plaintiffs,<br><br>v.<br><br>Michael Koile, individually as an employee with the State of Arizona Child Protective Services; Karen Howard, individually as an employee with the State of Arizona Child Protective Services; Gillian Vanesse, individually as an employee with the State of Arizona Child Protective Services; Rita Gomez, individually as an employee with the State of Arizona Child Protective Services; Sarah Jenkins, individually as an employee with the State of Arizona Child Protective Services; Kimberly Pender, individually as an employee with the State of Arizona Child Protective Services; Joanna Lensche, individually as an employee with the State of Arizona Child Protective Services; Steve Roundtree, individually as an employee with the State of Arizona Child Protective Services; Clarence H. Carter, individually as Director, Arizona Department of Economic Security; State of Arizona; John and Jane Does 1-5; and Black Entities 1-5,<br><br>Defendants. | No. CV-15-01270-PHX-NVW<br><br>**ORDER** |

Before the Court are Defendants' Motion to Dismiss Second Amended Complaint (Doc. 66, sealed) and Amended Motion to Dismiss Second Amended Complaint (Doc. 68, redacted public version).

## I. RULE 12(b)(6) LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint need contain only "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Generally, material beyond the pleadings may not be considered in deciding a Rule 12(b)(6) motion. However, a court may consider evidence on which the complaint necessarily relies if (1) the complaint refers to the document, (2) the document is central to the plaintiff's claim, and (3) no party questions the authenticity of the copy of the document submitted to the court. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

## II. FACTUAL ALLEGATIONS ASSUMED TO BE TRUE

The following facts are assumed to be true for the purpose of deciding the motions to dismiss the Second Amended Complaint. The Court makes no determination of whether they are in fact true.

At all times relevant, Defendants Michael Koile, Karen Howard, Gillian Vanesse, Rita Gomez, Sarah Jenkins, Kimberly Pender, Joanna Lensche, and Steve Rountree were

employees of the State of Arizona through the Child Protective Services ("CPS") division of the Arizona Department of Economic Security.[1]  Defendant Clarence E. Carter was the Director of the Arizona Department of Economic Security.

Plaintiff Ellen Keates is the mother of A.K.  On May 20, 2013, A.K. was thirteen years old, had been experiencing depression for four to six months, and occasionally had suicidal ideation.  About one month before school ended, A.K. was suspended for two weeks for violation of school rules, and she was depressed and stressed.  On May 20, 2013, Keates took A.K. to Christ Cares Clinic where she began to cry in the waiting room.  When asked, A.K. told a Clinic employee that she was sad, she did not currently have suicidal ideation, but she had experienced suicidal ideation in the past.  A.K. told a doctor at the Clinic she previously had thoughts of choking herself.

A Clinic employee told Keates she needed to take A.K. to the emergency room. Keates took A.K. to Phoenix Children's Hospital ("PCH"), where she was told that someone from the Clinic had called ahead.  A.K. was seen immediately, which was about 9:00 p.m.  A triage nurse noted that A.K. reported having suicidal ideation, but she had denied having a plan to carry it out.  A.K. was subsequently evaluated by a doctor, who ordered evaluation by a social worker and a psychological consultation.

About midnight, two PCH employees discussed treatment options with Keates and said she could take A.K. home if she provided a safety plan.  Keates offered several options, including having A.K. stay at home with her twelve-year-old brother, stay at a neighbor's home, or stay at the public library while Keates was working.  When those options were not accepted, Keates offered to stay home with A.K., but explained she is self-employed and staying home would be detrimental to her business.

Subsequently, the PCH employees said that A.K. was required to go to a "mental hospital" for inpatient treatment.  Keates informed them that she did not have insurance

---

[1] The Second Amended Complaint refers to the Arizona Department of Economic Security and Child Protective Services because all of the events at issue occurred prior to January 13, 2014, when Child Protective Services became part of a separate cabinet-level agency, the Child Safety and Family Services Division. (Doc. 58 at 2, ¶ 5.)

to pay for inpatient treatment. The PCH employees tried to get Keates' contact information, but she refused. At that point, Keates "furiously expressed her concern" that A.K. was being held hostage until PCH could get billing information from her. (Doc. 58 at 9, ¶ 51.) Someone from PCH reported to CPS that "A.K. was suffering from *severe* depression and had attempted suicide by strangulation on May 20, 2013." (*Id.*, ¶ 52.) It also was reported that inpatient care was necessary and Keates was not able to enact a safety plan for A.K. Eventually Keates gave PCH her contact information. PCH staff said A.K. would be reassessed in the morning, and Keates should go home and call in the morning.

At 12:45 a.m., May 21, 2013, PCH employees called the CPS Hotline. They called again at 1:36 a.m. At 7:44 a.m., they called CPS supervisor Gillian Vanesse. About 8:00 a.m., Keates called PCH, no one answered, and she left a voicemail message.

When Keates called PCH again, she was told there would be no second assessment and CPS had told PCH that Keates was not to have contact with A.K. and was not to come back to PCH. A PCH employee informed CPS that a second assessment would not be done unless A.K. waited for 48 hours for a bed at an inpatient treatment facility. PCH employees attempted to call Keates, using an incorrect telephone number. About 10:48 a.m., Michael Koile, a CPS case worker, interviewed A.K. without Keates' presence or consent. A.K.'s only complaint about Keates was that she "yells, screams, and cusses."

Koile never contacted Keates. About 11:45 a.m., with the consent of CPS supervisor Kim Pender, Koile issued a Temporary Custody Notice to take A.K. into custody. CPS employees Joanna Lensche and Steve Rountree collaborated in the issuance of the Temporary Custody Notice.

Koile told PCH that Keates was prohibited from seeing A.K. during the remainder of A.K.'s stay at PCH. PCH discharged A.K. on May 21, 2013. Keates was not billed for A.K.'s stay at PCH. Plaintiffs believe that PCH was paid for A.K.'s stay because CPS took immediate temporary custody of A.K.

When discharged from PCH, A.K. was transferred to Aurora Behavioral Health System in Tempe, Arizona, by ambulance while strapped down to a gurney. Koile reported to Aurora that A.K. had tried to commit suicide on May 20, 2013, and instructed that Keates was not allowed to contact A.K. A.K. told the intake nurse that she did not have suicidal ideation at that time, she had experienced suicidal ideation over the past several months, but she had no plan to commit suicide. She said she was depressed. A.K. told the Aurora intake nurse that the doctor at Christ Cares Clinic misunderstood her when she said she had thoughts of choking herself "a while ago," and she did not feel like that now. A.K. told the Aurora intake nurse that she did not try to strangle herself the previous day. The suicide risk assessment at Aurora resulted in a finding of "low" risk for suicide.

On May 22, 2013, Koile interviewed Keates. On May 23, 2013, Koile informed Aurora that he concluded Keates was unable to care for A.K. and that a dependency petition would be filed. On May 24, 2013, a dependency petition was filed by the Arizona Department of Economic Security on behalf of CPS, stating that A.K. had attempted suicide on May 20, 2013, and Keates refused admitting A.K. for treatment because she lacked insurance. On May 26, 2013, Keates met with Koile and Pender, during which Koile told Keates that A.K. required intensive outpatient treatment at Aurora and if Keates could not make financial arrangements for the treatment, A.K. could not go home. When Keates called Aurora, she was told that intensive outpatient treatment was not recommended for A.K.

On May 29, 2013, A.K. was discharged from Aurora into Koile's custody and placed into a foster home. The foster mother, an Aurora social worker, did not take A.K. to Aurora for intensive outpatient treatment. CPS did not ensure that A.K. received her prescribed psychotropic medications. On June 11, 2013, a report from CPS was filed with the juvenile court. It stated that there were no court orders restricting Keates from having contact with A.K. While A.K. was at the foster home, no one from CPS visited her.

On August 5, 2013, A.K. was placed in a group home, which would not transport A.K. to her high school where A.K. had been accepted into an honors program. Keates informed a CPS case worker about the transportation issue and offered to drive A.K., but CPS refused. On August 8, 2013, A.K.'s guardian ad litem obtained an emergency court order requiring CPS to provide transportation to and from the group home and A.K.'s high school. CPS arranged for a taxi to transport A.K., which caused A.K. to be embarrassed and increasingly depressed.

On September 11, 2013, the juvenile court granted a change in the case plan to in-home dependency with A.K. remaining a temporary ward of the state. On September 12, 2013, A.K. returned home, but her relationship with Keates was damaged. On November 26, 2013, the juvenile court granted a motion to dismiss A.K.'s dependency by the Arizona Department of Economic Security.

### III.  PROCEDURAL BACKGROUND

On May 23, 2014, Plaintiffs served a notice of claim upon Defendant State of Arizona. On May 26, 2015, Plaintiffs filed this action in the Superior Court of the State of Arizona for Maricopa County. On July 8, 2015, Defendants removed the action to this Court.

On November 6, 2015, Defendants moved to dismiss the Complaint. (Doc. 15.) On January 28, 2016, Plaintiffs' First Amended Complaint was deemed filed, and Defendants' Motion to Dismiss was denied as moot. (Docs. 30, 45.) On February 11, 2016, Defendants moved to dismiss Plaintiffs' First Amended Complaint. (Doc. 55.) On February 11, 2016, the Court ordered that, if Plaintiffs contended any further amendment of their Amended Complaint could cure any alleged deficiency, Plaintiffs were required to submit a proposed further amended complaint containing all further allegations Plaintiffs could make. (Doc. 56.) On February 25, 2016, Plaintiffs filed a Second Amended Complaint without seeking leave to do so. (Doc. 58.) The Court treated the filing as a motion for leave to file the amended pleading, granted it, and deemed the

Second Amended Complaint filed on March 15, 2016. (Doc. 64.) On May 17, 2016, Defendants moved to dismiss Plaintiffs' Second Amended Complaint. (Docs. 66, 68.)

The Second Amended Complaint defines "Individual Defendants" as including all of the named Defendants except the State of Arizona and Clarence E. Carter, Director of the Arizona Department of Economic Security. Count I alleges a claim under 42 U.S.C. § 1983 against the Individual Defendants and Defendant Carter for violation of constitutional rights to familial association, free speech, and privacy and for warrantless seizure of child and unlawful detention. Count II alleges a claim under 42 U.S.C. § 1983 against the Individual Defendants for violation of due process right to be free from dishonesty of public employees in juvenile court proceedings. Although Count II states that it is pled against only the Individual Defendants, it alleges wrongdoing by Defendant Carter as well. Count III alleges a claim by A.K. against the State of Arizona for violation of Article 2 § 4 of the Arizona Constitution. Counts IV, V, and VI allege claims against the State of Arizona for negligent and/or intentional infliction of emotional distress, abuse of process, and negligent supervision. Plaintiffs seek only money damages.

## IV. ANALYSIS

### A. Defendant Carter and the Individual Defendants Are Protected by Qualified Immunity Under § 1983.

Under § 1983, government officials sued in their individual capacities may assert the affirmative defense of qualified immunity, which generally protects them from civil damages for performance of discretionary duties. *Butler v. Elle*, 281 F.3d 1014, 1021 (9th Cir. 2002); *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009). Qualified immunity protects an official who "makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances." *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004). "The standard is an objective one that leaves 'ample room for mistaken judgments.'" *Mueller*, 576 F.3d at 992 (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)). "Qualified immunity gives government officials breathing room to

make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2085 (2011) (quoting *Malley*).

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Plaintiffs have the burden to prove that the allegedly violated right was "clearly established" at the time of the alleged misconduct. *Baker v. Racansky*, 887 F.2d 183, 186 (9th Cir. 1989). "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

To determine whether a government official is entitled to qualified immunity, the district court must determine (1) whether the officer violated a plaintiff's constitutional right and (2) whether the constitutional right was "clearly established in light of the specific context of the case" at the relevant time. *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc). The court may address the questions in either order. *Id.*

### 1. Count I (Familial Association, Free Speech, Privacy, Warrantless Seizure of Child, Unlawful Detention)

Count I alleges that "the right to familial association guaranteed under, without limitation, the First, Fourth, and Fourteenth Amendments is 'clearly established' such that a reasonable case worker in Individual Defendant's situation would know it is unlawful to remove a child from the care, custody, and control of his or her parents or to question, examine, or search a child in the absence of exigent circumstances without first obtaining a warrant to do so." (Doc. 58 at 19, ¶ 139.) It alleges that "Defendants, and each of them," violated Plaintiffs' civil rights by "removing, detaining, and continuing to detain, A.K. from the care, custody, and control of her mother Ellen Keates," without just

cause and by questioning A.K. without the consent of her mother, court order, or warrant. (*Id.* at 20-21, ¶ 143.) It further alleges that "no exigent circumstances existed that might excuse Defendants', and each of their, failure to obtain parental consent or a court order prior to the seizure of A.K. because Ellen Keates did not present an imminent danger of inflicting serious bodily injury to A.K., and that A.K. did not present an imminent danger of inflicting serious bodily injury to herself, within the time it would take to obtain a court order or warrant." (*Id.* at 21, ¶ 143.) Count I further alleges that "Defendants, and each of them," violated Plaintiffs' procedural due process rights by seizing and removing A.K. from her mother's care without first providing notice and opportunity to be heard. (*Id.*, ¶ 144)

Most of Count I refers to "Defendants," but the heading states that it is pled against Individual Defendants and Defendant Carter. It alleges that "Defendant Carter was the official policymaker for the Arizona Department of Economic Security, including the Child Protective Services Division" and that "all or some of the unconstitutional actions or conduct as set forth herein are the direct result of the unconstitutional policies, procedures and practices promulgated by Defendant Carter." (*Id.*)

"While a constitutional liberty interest in the maintenance of the familial relationship exists, this right is not absolute. The interest of the parents must be balanced against the interests of the state and, when conflicting, against the interests of the children." *Woodrum v. Woodward Cty., Okl.*, 866 F.2d 1121, 1125 (9th Cir. 1989). "The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies." *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.,* 237 F.3d 1101, 1107 (9th Cir. 2001). An official violates this right by removing a child from his or her home without information at the time of the seizure that establishes "reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." *Id.* at 1106 (citation omitted); *accord Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007).

Under Arizona law, a child may be taken into temporary custody by a child welfare investigator or a child safety worker if probable cause exists to believe that the child is a victim or will imminently become a victim of abuse or neglect or is suffering a serious physical or emotional injury that can only be diagnosed by a medical doctor or psychologist. A.R.S. § 8-821(B).

The Second Amended Complaint alleges facts that provided reasonable cause to believe that A.K. was in imminent danger of serious bodily injury. As alleged, A.K. had been experiencing depression for four to six months and occasionally had suicidal ideation. On May 20, 2013, A.K. told the doctor at Christ Cares Clinic that she had had thoughts of choking herself "a while ago," but not presently. The doctor could have interpreted "a while ago" to mean earlier that day. The Clinic reported the information to PCH where A.K. was assessed. At midnight, PCH employees discussed treatment options with Keates and concluded Keates could not or would not be able to provide adequate safety for A.K. at home. PCH employees determined that A.K. needed inpatient treatment, and Keates said she could not afford it. Keates refused to give PCH her contact information. Keates "furiously expressed her concern" that PCH was going to hold A.K. hostage until PCH obtained billing information from Keates. Because Keates refused to provide contact information, PCH staff made a CPS report for fear that Keates would take A.K. and leave.

After midnight on May 21, 2013, PCH employees called the CPS Hotline twice, and then they called a CPS supervisor at 7:44 a.m. A PCH employee reported to CPS that A.K. was suffering from severe depression and had attempted suicide by strangulation on May 20, 2013. Koile interviewed A.K. at 10:48 a.m. and issued a Temporary Custody Notice an hour later. Shortly thereafter, A.K. was discharged from PCH and transferred to Aurora. On May 22, 2013, Koile interviewed Keates. On May 24, 2013, Koile verified the CPS dependency petition based on information that he had received from PCH. It was reasonable for Koile to rely on the information he received from PCH.

Based on the assessments and recommendations of medical professionals at PCH, Koile and his supervisor Pender had reasonable cause to believe that A.K. was in imminent danger of suicide and that placing her in inpatient treatment at Aurora was reasonably necessary to avert suicide. They had reasonable cause to issue the Temporary Custody Notice regardless of whether thirteen-year-old A.K., who admitted to depression, now denied thoughts or plans of suicide. Based on what PCH employees told Koile, he had reasonable cause to verify statements in the dependency petition, including that A.K. was assessed by PCH staff and recommended for inpatient behavioral health treatment, Keates refused to admit A.K. into treatment due to her lack of insurance, and Keates reportedly failed to seek services for A.K. prior to her current hospitalization. As alleged, Koile and Pender did not violate Plaintiffs' constitutional rights.

The Second Amended Complaint does not allege any specific wrongdoing or integral involvement by any of the other Individual Defendants, only that they answered phone calls or "collaborated." But even if any of them did anything materially related to "removing, detaining, and continuing to detain, A.K. from the care, custody, and control of her mother Ellen Keates," all of the Individual Defendants were entitled to rely on PCH's assessments and recommendations. Count I as pled against Defendant Carter also fails because no unconstitutional conduct by the Individual Defendants resulted from any unconstitutional policies, procedures, and practices promulgated by Defendant Carter.

Therefore, Count I will be dismissed because Defendant Carter and all of the Individual Defendants are entitled to qualified immunity.

### 2. Count II (Familial Association/Right to Be Free from Dishonesty of Public Employees in Juvenile Court Proceedings)

Count II alleges that "there existed a clearly established due process right not to be subjected to false accusations on the basis of false evidence that was deliberately fabricated by the government, such that a reasonable case worker in Defendants' situation would know it is unlawful to lie or to fabricate evidence in court reports or any other document filed with the juvenile court to influence judicial decision making." (*Id.* at 23.) It alleges that "Defendants, and each of them," had a duty to be truthful and accurate in

1 petitions, reports, and documents submitted to a court. (*Id.*)  Count II also alleges that
2 "Defendant Carter was the official policymaker for the Arizona Department of Economic
3 Security, including the Child Protective Services Division" and that "all or some of the
4 unconstitutional actions or conduct as set forth herein are the direct result of the
5 unconstitutional policies, procedures and practices promulgated by Defendant Carter."
6 (*Id.* at 23-24.)  It further alleges that Defendants knowingly presented false allegations
7 and false testimony before the juvenile court, violating Plaintiffs' First and Fourteenth
8 Amendment rights. (*Id.* at 24.)

The Second Amended Complaint does not allege any facts to support the allegation that any of the Defendants submitted to the juvenile court "false evidence that was deliberately fabricated by the government."  It alleges that in the dependency petition CPS "falsely stated that A.K. attempted suicide on May 20, 2013 even though A.K. specifically told Mr. Koile, PCH employees, or agents, and ABHS employees, or agents, that she did not attempt a suicide on May 20, 2013 and at any time in the recent past." (Doc. 58 at 13-14, ¶ 92.)  But it also alleges that when A.K. was transferred to Aurora, "A.K. told the intake nurse that the doctor at Christ Cares Clinic misunderstood her in that A.K. had thoughts of choking herself in the past, but 'that was a while ago and [she] [did not] feel like that now.'"  (*Id.* at 12, ¶ 79.)  It alleges that information from Christ Cares Clinic was communicated to PCH and from PCH to CPS.  It further alleges that PCH employees called CPS during the night and recommended that A.K. be placed in an inpatient treatment facility.  Koile's incorporation of information provided by PCH rather than assertions by A.K. and Keates does not constitute "deliberately fabricated" false evidence.  Moreover, the dependency petition is supported by additional information such as PCH's recommendation that A.K. be placed in inpatient behavioral health treatment, which Keates refused.  The dependency petition was verified only by Koile.  As alleged, if the dependency petition included false statements, Koile is protected by qualified immunity because his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

The Second Amended Complaint does not allege any specific wrongdoing or any involvement in submitting false evidence to the juvenile court by any of the other Individual Defendants. If Count II is intended to plead a claim against Defendant Carter, it also fails because no unconstitutional conduct by the Individual Defendants resulted from any unconstitutional policies, procedures, and practices promulgated by Defendant Carter.

Therefore, Count II will be dismissed because Defendant Carter and all of the Individual Defendants are entitled to qualified immunity.

**B.  Counts I and II Fail to State a Claim Upon Which Relief Can Be Granted Against Defendant Carter and the Individual Defendants Howard, Vanesse, Gomez, Jenkins, Lensche, and Rountree.**

The Second Amended Complaint pleads two claims against Defendant Carter and the Individual Defendants; both are § 1983 claims for which all of the Individual Defendants and Defendant Carter are protected by qualified immunity. In addition, as stated above, the Second Amended Complaint does not allege that Individual Defendants Howard, Vanesse, Gomez, Jenkins, Lensche, and Rountree committed any specific acts that were wrongful or were integral to allegedly unconstitutional conduct.

If they were not protected by qualified immunity, the Individual Defendants could be liable for their actions that are integral to unconstitutional conduct. *Boyd v. Benton Cty.*, 374 F.3d 773, 780 (9th Cir. 2004). Liability under § 1983 is predicated on the official's "integral participation," *i.e.*, fundamental involvement, in the conduct that allegedly caused a constitutional violation. *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007). But Plaintiffs have not alleged any actions by Individual Defendants Howard, Vanesse, Gomez, Jenkins, Lensche, or Rountree showing that any of them were fundamentally involved in the conduct that allegedly caused constitutional violations. Rather, Plaintiffs contend that "the thrust of Plaintiffs' allegations throughout the complaint is that the Defendants' group decision making deprived Plaintiffs of their constitutional rights." (Doc. 73 at 10.) However, the Second Amended Complaint does not allege any Defendant's participation in any group decision making other than Pender

consenting to Koile issuing the Temporary Custody Notice.  And the Second Amended Complaint does not include any allegations that make it plausible that any of the six other Individual Defendants were fundamentally involved in any decisions that allegedly deprived Plaintiffs of constitutional rights.

Regarding Defendant Carter, the Second Amended Complaint alleges that he was the "official policymaker for the Arizona Department of Economic Security, including the Child Protective Services Division."  (Doc. 58 at 21-22, ¶ 146, 23-24, ¶ 154.)  It alleges that Defendant Carter promulgated unconstitutional policies, practices, and procedures including (a) authorizing seizure of children without meaningful investigation, (b) authorizing the failure of CPS investigators to provide information to the Arizona Foster Care Review Board, (c) authorizing CPS to continue removal of children from parents after return of the child no longer presents a danger, and (d) authorizing CPS to maintain custody of children in conditions worse than the conditions they were removed from.  The Second Amended Complaint does not allege any facts to support these conclusory allegations.  It is not sufficient to allege that a CPS employee did something wrong, and therefore Defendant Carter must have promulgated a policy authorizing the wrongdoing.

Therefore, the Second Amended Complaint will also be dismissed against Defendant Carter and the Individual Defendants Howard, Vanesse, Gomez, Jenkins, Lensche, and Rountree under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**C.  State Law Claims Against the State Do Not Require that Notices of Claim Be Served on Defendant Carter and the Individual Defendants.**

Counts III, IV, V, and VI are state law claims by A.K. against the State of Arizona.  Plaintiffs contend that the State is vicariously liable under the doctrine of *respondeat superior* for the acts or omissions of its employees within the scope of their employment.  Defendants contend that these state law claims are barred because Plaintiffs did not serve notices of claim on the individual defendants in addition to filing a notice of claim with the State.

In Arizona, "public entities are liable for acts and omissions of employees in accordance with the statutes and common law of this state." *Johnson v. Superior Court in & for Cnty. of Pima*, 158 Ariz. 507, 508, 763 P.2d 1382, 1383 (Ct. App. 1988). Under A.R.S. § 12-821.01(A),

> **A.** Persons who have claims against a public entity, public school or a public employee shall file claims with the person or persons authorized to accept service for the public entity, public school or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues.

The statute has been construed as requiring "that notice be given to the public employee, as well as the public entity, for claims arising from acts or omissions committed or allegedly committed by the employee within the scope of his or her employment prior to the maintenance of lawsuits *against them*." *Johnson*, 158 Ariz. at 509, 763 P.2d at 1384 (emphasis added). Because Counts III, IV, V, and VI are not alleged against Defendant Carter and the Individual Defendants, Plaintiffs were not required to serve them with notices of claim.

Therefore, Counts III, IV, V, and VI will not be dismissed for failure to serve notices of claim upon Defendant Carter and the Individual Defendants.

### D. Further Leave to Amend Counts I and II Is Not Sought, Nor Will Be Granted.

Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), courts should consider five factors: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "Futility alone can justify the denial of a motion to amend." *Id.* Leave to amend should be granted if the complaint's deficiencies can be cured with additional factual allegations that are consistent with and do not contradict allegations in the challenged pleading. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). Dismissal without leave to amend is proper if the complaint cannot be cured by any amendment. *Id.*

Courts have "especially broad" discretion to deny leave to amend where the plaintiff already has had one or more opportunities to amend a complaint. *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) ("Leave to amend need not be given if a complaint, as amended, is subject to dismissal.").

Twice Plaintiffs were granted leave to amend their complaint after seeing a motion to dismiss by Defendants. Plaintiffs were warned to include all allegations they could make to cure any alleged deficiency. Yet, the Second Amended Complaint does not cure the deficiencies. No further leave to amend was sought or will be granted. Therefore, the Counts I and II of the Second Amended Complaint will be dismissed without further leave to amend.

### E. Remand to State Court

This case was removed from Superior Court of the State of Arizona for Maricopa County. Under 28 U.S.C. § 1441(a), "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States," which is brought in a state court, may be removed to the federal district court. Under 28 U.S.C. § 1331, district courts have original jurisdiction over causes of action created by federal law and state-law causes of action that "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314, 125 S. Ct. 2363, 2368 (2005).

Whenever a cause of action within the jurisdiction conferred by 28 U.S.C. § 1331 is joined with one or more otherwise non-removable causes of action, the entire case may be removed and all issues determined by the district court, or the district court may remand all matters in which state law predominates. 28 U.S.C. § 1441(c). The district court, in its discretion, may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).

In some circumstances, remand of a removed case involving supplemental claims will better accommodate the values of economy, convenience, fairness, and comity than will dismissal of the case. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S. Ct. 614, 619-20 (1988).

A district court has "the power to hear claims that would not be independently removable even after the basis for removal jurisdiction is dropped from the proceedings." *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991). "It is generally within a district court's discretion either to retain jurisdiction to adjudicate the pendant state claims or to remand them to state court." *Id.* In *Harrell*, the Ninth Circuit recognized that "it is generally preferable for a district court to remand remaining pendent claims to state court," but concluded in that case the district court's retention of jurisdiction over the state-law claims was within its discretion. *Id.*

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 619 n.7 (1988). The lawsuit here is "the usual case" in which all federal-law claims are eliminated early in the litigation, and the principles of judicial economy, convenience, fairness, and comity are not promoted by federal retention of the state-law claims. Further, if federal-law issues are raised as defenses, the state courts are competent to decide them. *See, e.g.*, *Sullivan v. First Affiliated Securities, Inc.*, 813 F.2d 1368, 1372 n.5 (9th Cir. 1987). Therefore, in its discretion under 28 U.S.C. § 1367(c)(3), the Court will decline to exercise supplemental jurisdiction over Counts III, IV, V, and VI of the Second Amended Complaint because it has dismissed all claims over which it had original jurisdiction.

A district court may relinquish jurisdiction over remaining supplemental claims either by dismissing the case without prejudice or by remanding it to the state court. *Carnegie-Mellon*, 484 U.S. at 351, 108 S. Ct. at 619-20. The district court has discretion

to remand to state court, rather than dismiss, supplemental claims upon a determination that remand best serves the principles of economy, convenience, fairness, and comity. *Id.* at 357, 108 S. Ct. at 623. Here, remand avoids the delay, cost, inconvenience, and potential unfairness that may be imposed on Plaintiffs by requiring them to file and serve their claims again in state court following dismissal without prejudice.

IT IS THEREFORE ORDERED that the Defendants' Motion to Dismiss Second Amended Complaint (Doc. 66, sealed) and Amended Motion to Dismiss Second Amended Complaint (Doc. 68, redacted public version) are granted with respect to Counts I and II of the Second Amended Complaint.

IT IS FURTHER ORDERED that the Clerk enter judgment dismissing Counts I and II of the Second Amended Complaint (Doc. 58) with prejudice. The Court finds no just reason for delay in entry of this partial judgment.

IT IS FURTHER ORDERED that Counts III, IV, V, and VI of the Second Amended Complaint be remanded to the Superior Court of the State of Arizona for Maricopa County. The Clerk is directed to terminate this case.

Dated this 5th day of August, 2016.

_____
Neil V. Wake
United States District Judge