**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ellen Keates, an individual; and Amber Keates, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>Michael Koile, individually as an employee with the State of Arizona Child Protective Services; Karen Howard, individually as an employee with the State of Arizona Child Protective Services; Gillian Vanesse, individually as an employee with the State of Arizona Child Protective Services; Rita Gomez, individually as an employee with the State of Arizona Child Protective Services; Sarah Jenkins, individually as an employee with the State of Arizona Child Protective Services; Kimberly Pender, individually as an employee with the State of Arizona Child Protective Services; Joanna Lensch, individually as an employee with the State of Arizona Child Protective Services; Steve Rountree, individually as an employee with the State of Arizona Child Protective Services; Clarence H. Carter, individually as Director, Arizona Department of Economic Security; State of Arizona; John and Jane Does 1-5; and Black Entities 1-5,<br><br>Defendants. | No. CV-15-01270-PHX-NVW<br><br>**ORDER** |

Before the Court are Plaintiff's Motion for Partial Summary Judgment Against Defendant Michael Koile (Doc. 206) and State Defendants' Motion for Summary

Judgment (Doc. 210).[1]  Oral argument thereon was held on November 21, 2019.  For the reasons stated below, Plaintiff's motion shall be denied and State Defendants' motion shall be granted in part and denied in part.

**I.     SUMMARY JUDGMENT STANDARD**

A motion for summary judgment tests whether the opposing party has sufficient evidence to merit a trial.  Summary judgment should be granted if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A material fact is one that might affect the outcome of the suit under the governing law, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of showing the absence of genuine disputes of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, once the movant shows an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant, which must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.  The nonmoving party cannot rest on the pleadings and must do more than simply show there is "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party, not weigh the evidence or assess its credibility, and draw all justifiable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal citation omitted);

---

[1] The Court did not authorize the filing of Plaintiff's Supplemental Brief Re: Clarification of Statements Made at Oral Argument for the Parties' Cross-Motions for Summary Judgment (Doc. 243) or State Defendants' Objection thereto (Doc. 245). Nevertheless, the Court, in its discretion, has considered these papers.

*Anderson*, 477 U.S. at 255. When the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587 (internal citation and quotation marks omitted).

## II. BACKGROUND

### A. Undisputed Material Facts

On May 20, 2013, Plaintiff Ellen Keates ("Ellen") brought her daughter, Amber Keates ("Amber")[2], to Christ Cares Clinic in Phoenix, Arizona. Amber, who was 13 years old at that time, was examined by Dr. Susan M. Stephens, who conducted part of her examination in the presence of Ellen. Dr. Stephens reported Amber cried throughout the interview and told her she previously tried to hurt herself. According to Dr. Stephens, Ellen did not de-escalate the situation when she entered the exam room and told Amber to "snap out of it."

Dr. Stephens assessed Amber to be suffering from depression, anxiety, and severe family dysfunction. Most notably, she diagnosed Amber with "suicidal ideation." At the conclusion of the examination, Dr. Stephens referred Amber to the emergency department at Phoenix Children's Hospital ("PCH") for a psychiatric evaluation and possible admission. She additionally informed PCH that Arizona Child Protective Services ("CPS")[3] would need to be called unless Ellen's behavior – which Dr. Stephens indicated had inflicted trauma upon Amber during the examination – changed there. She faxed her examination notes to PCH. Thereafter, Dr. Stephens told Ellen she had called PCH and warned her that she would call CPS that night if Ellen did not bring Amber to PCH within the next thirty minutes. Ellen complied and Dr. Stephens never called CPS.

---

[2] State Defendants use Amber's initials ("A.K.") in their motion papers because Amber was a minor when the events at issue transpired, Federal Rule of Civil Procedure 5.2(a)(3) requires that minors be referred to by their initials in court filings, and they are "not aware of any court order otherwise." State Defendants failed to make themselves aware of the Court's July 30, 2018 Order, in which the Court changed the caption to reflect that Amber is "no longer a minor, [and] represents her interests as an individual" – a caption both Ellen and State Defendants employed in their respective motion papers (Doc. 104 at p. 2.). The Court shall use Amber's given name in this Order.

[3] CPS is now known as the Arizona Department of Child Safety.

1         At PCH, Amber was evaluated by Randall Call, an experienced crisis counselor at Crisis Preparation and Recovery, Inc. While Amber did not inform Call she had an articulable suicide plan at that time, Call recommended to Ellen that Amber receive inpatient treatment, as he believed she would not be safe if she went home with Ellen. This recommendation was based in part on Amber informing him that she had tried to strangle herself in the past and the dynamic he observed between Amber and Ellen. Indeed, Call painted an acrimonious picture of the situation, noting Ellen and Amber argued "throughout the interview" and Amber cried when discussing her mother. Call concluded that due to Ellen and Amber's "aggressive and verbally abusive relationship," he did not trust Ellen to stay home with Amber and that Amber "could do something impulsive to harm herself if left alone."

        Call was not alone in observing Ellen and Amber, as he was joined by Julie Kaplan, a licensed master social worker who is qualified to conduct mental health assessments. Although Kaplan did not conduct the assessment, she agreed with Call that Amber needed inpatient hospitalization and authored two reports that detailed her observations of Ellen and Amber.

        Ellen initially refused to allow Amber to be hospitalized and provide PCH with her name and contact information. Nevertheless, she eventually agreed to leave Amber in the emergency room overnight so she could be reassessed by a psychiatrist the following morning. She additionally provided PCH with her name, phone number, and address.

        Call and an unknown PCH employee separately called the CPS Hotline. Call spoke with Defendant Steven Rountree ("Rountree"), who at that time was a Hotline Intake Specialist ("Intake Specialist") at CPS. Intake Specialists are effectively 911 operators, as they are responsible for fielding calls from the public that report suspected abuse or neglect. They are not authorized to make judgments regarding the actions reporters should take pending a CPS investigation.

        According to Rountree, in his role he was limited to fielding reports, taking the information provided by the reporter, and determining whether the information met the

criteria for a child abuse report. If the criteria were met, he would enter the information into CPS's database and send a report to a CPS investigative unit. Rountree declared he was "not involved in any decisions" concerning investigations, whether to substantiate reports, whether to take children into custody, or limitations on interactions between children and suspected perpetrators. He further declared that "at no time" while he was an Intake Specialist did he indicate CPS would take custody of a child.

Notwithstanding these assertions, Rountree has no specific memory of Amber's case. He believes he received a phone call on May 21, 2013 at 12:45 a.m., evaluated the information he received, and determined it met the child abuse criteria. He then entered the information in the CPS database and sent a copy of the report via e-mail to CPS's After Hours Investigation Team. He does not recall being consulted by investigators regarding any further course of action.

However, Randall Call's notes shed some light. In the report he signed at 2:02 a.m. on May 21, 2013, Call wrote he "gave a report to Steve Roundtree [sic] with CPS, and he stated the case would be assigned to Joanna Lensch" and that "CPS has been notified and they will take temporary custody of the PT [Amber]." In the Discharge Plan he signed at 2:53 a.m., he indicated Amber's medical records would be faxed to numerous inpatient facilities, including Aurora Behavioral Health System – East ("Aurora") in Tempe, Arizona. He also noted "CPS will take custody of the PT [Amber] to sign her in once a bed becomes available." In his deposition, he testified he was informed by CPS that CPS would take custody of Amber and he believes he would have been informed of this by Rountree. He further testified that based on his report, he surmises that CPS advised him that CPS would take custody of Amber.

Amber's case ended up being assigned to Defendant Kimberly Pender ("Pender"), who directed Defendant Michael Koile ("Koile") to investigate the report. Shortly before 11:00 a.m. on May 21, 2013, Koile arrived at PCH and spoke with Amber, as well as Cheryl Searles Trenholm, a clinical social worker. He did not speak with Randall Call or Julie Kaplan. Nor did he speak with Ellen, despite each individual's repeated attempts to contact

the other. A PCH staff member contacted Aurora regarding Amber at 11:15 a.m. and shortly after, Virginia Bernal, a PCH nurse, reported that Amber "will be transferring out to Aurora in Tempe" and that a bed "will be available at 3:00 [p.m.]."

At approximately 11:45 a.m., CPS, at the direction of Koile, took custody of Amber. In the Temporary Custody Notice ("TCN") Koile executed, he noted "Mother refuses to admit child into inpatient treatment as recommended by medical staff." Later that afternoon, Amber was discharged from PCH and transported to Aurora via ambulance. Neither Ellen nor Amber consented to the seizure and Ellen was not at PCH when the seizure took place. A copy of the TCN was left at Keates' residence at 2:20 p.m.

Koile, acting within the course and scope of his duties as an Arizona employee and under the color of law, seized Amber without a court order. He did so with the approval of his supervisor, Pender, who spoke with him over the phone before Koile seized Amber. Pender approved Koile's decision to seize Amber solely based on information Koile provided her during their conversation.

**B. Procedural History**

On May 26, 2015, Ellen, on behalf of herself and Amber, filed this action in the Superior Court of the State of Arizona in and for Maricopa County (the "Superior Court"). Defendants soon after removed the action to this Court.

The operative complaint (the "Complaint") was brought against Koile; Pender; Rountree; Joanna Lensch ("Lensch"); Karen Howard ("Howard"); Gillian Vanesse ("Vanesse"); and Rita Gomez ("Gomez"), individually as employees with CPS; Clarence H. Carter, as Director of the Arizona Department of Economic Security; and the State of Arizona ("Arizona"). The term "Individual Defendants" is defined therein as all of the named defendants except Arizona and Carter.

Count I alleges a claim by Ellen and Amber against the Individual Defendants and Carter under 42 U.S.C. § 1983 for violation of their constitutional rights to familial association under the First, Fourth, and Fourteenth Amendments. Count II alleges a claim by Ellen and Amber against the Individual Defendants under 42 U.S.C. § 1983 for violation

of their right to be free from deliberately falsified evidence in dependency proceedings. Counts III-VI allege claims by Amber against Arizona for violation of Article 2, § 4 of the Arizona Constitution, negligent and/or intentional infliction of emotional distress, abuse of process, and negligent supervision, respectively.

On August 5, 2016, the Court dismissed Counts I and II on the basis of qualified immunity and remanded Counts III-VI to the Superior Court. Almost two years later, the Court of Appeals affirmed the dismissal of Count II and Count I as against Carter, Vanesse, Howard, Gomez, and Jenkins. The Court of Appeals reversed the dismissal of Count I as against Koile, Pender, Rountree, and Lensch. Counts III-VI were reinstated by virtue of the Court subsequently vacating the August 5, 2016 judgment.

Over the next few months, the action narrowed further. On August 14, 2018, Amber voluntarily dismissed all of her claims (Doc. 108), which in effect dismissed Counts III-VI in their entirety and released Arizona from the action.[4] On May 9, 2019, the Court granted the parties' stipulation to dismiss the action as to Lensch.

Three defendants therefore remain: Koile, Pender, and Rountree (collectively, the "State Defendants"). Keates' motion seeks an order that Koile is liable under the Constitution. State Defendants' motion seeks summary judgment in their favor.

**III. ANALYSIS**

    **A. Liability of Koile and Pender**

With regard to Koile and Pender, both motions are grounded on qualified immunity. The principles underlying this doctrine, as well as those underlying the constitutional rights at issue, are clear. However, the evidence, their inferences, and their context are disputed or disputable. The discovery record concerning the liability of Koile and Pender produces as many questions as answers. A jury trial is therefore necessary.

For example, there are issues of fact as to what Koile investigated and what he was informed of. While he did not speak with Call or Kaplan, he spoke with Trenholm and avers, albeit without evidence, that he had medical records prior to seizing Amber.

---

[4] *See* Doc. 177 ("[T]he State of Arizona is no longer a party to this action.").

Whether he had them, what information they contain, and whether he reviewed them are issues that have not been resolved. It is additionally unclear whether Koile possessed or reviewed the background information contained in the Comprehensive Child Safety and Risk Assessment he and Pender authored, as well as when that information was entered therein.

Moreover, the reason why CPS took Amber into custody is disputed or disputable. While the TCN states Amber's removal was required because Ellen refused to admit her "into inpatient treatment, as required by the medical staff," Virginia Bernal stated in her deposition that Amber was under CPS custody "due to the mom [Ellen] not answering her phone." As these conflicting sources implicate the reasoning behind the seizure, they further demonstrate summary judgment would be inappropriate.

Because Pender authorized Koile's seizure of Amber entirely based upon her discussion with Koile, the issues of fact regarding Koile's investigation are issues that preclude granting summary judgment in favor of Pender. The fact Pender and Koile's discussion occurred orally only muddles the picture further.

For the foregoing reasons, Ellen's motion will be denied in its entirety and State Defendants' motion, as to Koile and Pender, will be denied.

### B. Liability of Rountree

As the Court of Appeals recognized, Rountree cannot be held liable for a constitutional violation under 42 U.S.C. § 1983 unless he was an integral participant in the allegedly unlawful conduct—the seizure of Amber. *Keates*, 883 F.3d at 1241 (citing *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996)). Under the integral participant doctrine, defendants can be liable even if the actions of each defendant do not "rise to the level of a constitutional violation." *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004). However, this doctrine does not implicate state actors who were "mere bystanders" to unconstitutional conduct. *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1090 (9th Cir. 2011) (internal citations omitted).

State actors who perform preliminary actions preceding unconstitutional conduct are not "integral participants." In *Bravo*, the Court of Appeals held officers who conducted a background check prior to the execution of a search warrant by SWAT team personnel were not liable for alleged Fourth Amendment violations arising from its execution. *Id.* The officers' "short-lived" role, the Court of Appeals explained, was limited to conducting a background investigation on the target of the warrant "before handing responsibility for execution" thereof to the SWAT team. *Id.* None of the officers was present at the property where the warrant was executed and the officers did not have supervisory authority over the SWAT team personnel. *Id.*

Here, the Court of Appeals found the Complaint stated a claim against Rountree (as well as Lensch) because it alleges "Rountree . . . spoke to Randy Call . . . who informed Keates that A.K. [Amber] was not allowed to leave, and . . . Rountree collaborated in the issuance of the TCN." *Keates*, 883 F.3d at 1243. These allegations, the Court of Appeals reasoned, indicate Rountree was cognizant of Amber's situation and "participated in a meaningful way in a collective decision" to issue the TCN. *Id.* Because the TCN provided the basis for the seizure, the Court of Appeals concluded these allegations, if true, establish Rountree was an integral participant in the seizure. *Id.*

Discovery has revealed these allegations are unfounded, as there is no evidence Rountree collaborated in the issuance of the TCN.[5] Rountree was not at PCH at any time on May 20, 2013 or May 21, 2013, and he did not speak with, or exercise authority over,

---

[5] The evidence the Court has considered in connection with State Defendants' motion regarding Rountree, with the exception of the Declaration of Steven Rountree (Doc. 218, Ex. 13), is contained in Ellen's submissions. *See* Doc. 216, Ex. 4 (Randall Call's report of his evaluation of Amber); Doc. 206-6, Ex. D at 30:3-24 (an excerpt from Randall Call's deposition testimony). Ellen's objections in her controverting statement of facts (Doc. 223) that these same documents contained in State Defendants' submissions have not been properly authenticated are specious and overruled. Also overruled is Ellen's objection as to relevance regarding Rountree initially indicating Amber's case would be assigned to Lensch. *See* Doc. 216, Ex. 4. What Rountree told Call is instrumental to Rountree's liability and is therefore relevant here. Finally, Ellen makes various objections to Call's report and deposition testimony on the basis of hearsay. To the extent these objections, which are not well defined, touch upon what Rountree told Call, they are overruled, as Rountree's statements constitute those of a party-opponent under Federal Rule of Evidence 801(d)(2)(A).

Koile, Pender, or any other CPS employee connected with the investigation. Nor did Rountree sign any document authorizing the seizure, much less the TCN. Rountree, like the officers in *Bravo*, performed preliminary tasks in connection with the investigation and then handed off responsibility to other state actors. His role, like that of the officers in *Bravo*, was short-lived. A leading player he was not.

Randall Call's report, substantiated by his deposition testimony, does not alter this conclusion. While Call noted "CPS will take custody of the PT [Amber] to sign her in once a bed becomes available," that does not show Rountree made the decision to seize Amber or collaborated with anyone in connection with the eventual seizure. Even when viewing this evidence in the light most favorable to Ellen and drawing all justifiable inferences in her favor, all this demonstrates is Rountree was a mere conduit; he was not even a bystander. Indeed, by the time Amber was seized, Rountree's role in the investigation had long since ended.

There is no evidence Rountree collaborated with anyone in seizing Amber. Accordingly, no reasonable jury could find Rountree was an integral participant in the seizure. Rountree is entitled to summary judgment.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Partial Summary Judgment Against Defendant Michael Koile (Doc. 206) is denied.

IT IS FURTHER ORDERED that State Defendants' Motion for Summary Judgment (Doc. 210) is granted with regard to Defendant Steven Rountree and denied with regard to Defendants Michael Koile and Kimberly Pender.

Dated: January 22, 2020.

_____
Neil V. Wake
Senior United States District Judge